UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-20929-CR-ALTONAGA

**UNITED STATES OF AMERICA**,

    Plaintiff,
vs.

**JUAN FELIPE MARTINEZ**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court for a hearing on August 20, 2014 ("Hearing") [ECF No. 57] on Defendant, Juan Felipe Martinez's ("Martinez['s]") Motion to Suppress Evidence . . . ("Motion") [ECF No. 40], filed on June 30, 2014. The United States (the "Government") filed its Response . . . ("Response") [ECF No. 43] on July 14, 2014, and Martinez filed his Reply . . . ("Reply") [ECF No. 46] on July 21, 2014. The Court has carefully considered the parties' written submissions, oral argument, and applicable law.

## I. BACKGROUND

Martinez is charged by Indictment [ECF No. 1] with twelve counts of violations of federal law, including extortion, bribery, and false writing. The Indictment alleges Martinez, a special agent with United States Immigration and Customs Enforcement, unlawfully enriched himself by using his official position to obtain payments from a foreign company and individuals. (*See generally* Indictment). As part of the investigation, the Government sought and received a warrant to search Martinez's home. (*See* Mot. 3). On March 19, 2012, Department of Homeland Security Office of Inspector General Senior Special Agent Reynaldo J.

Rodriguez ("Rodriguez") executed an Affidavit in Support of Search Warrant ("Affidavit") [ECF No. 40-2], and Magistrate Judge Jonathan Goodman approved the Search and Seizure Warrant ("Warrant") [ECF No. 40-1] that afternoon.  The ensuing search revealed evidence Martinez now seeks to suppress.  (*See generally* Mot.).

## II.  ANALYSIS

Martinez argues the Affidavit does not establish probable cause; the information in the Affidavit is stale and thus cannot support a finding of probable cause; the Affidavit recklessly relies on information from an informant the Government knew was unreliable; and the good-faith exception does not otherwise permit introduction of the evidence.  (*See generally* Mot.). Martinez seeks an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to excise the allegedly reckless inclusion of unreliable information.  (*See id.* 14–16).  The Government contests all of Martinez's arguments for suppression and asserts he has failed to meet his burden to show a *Franks* hearing is warranted in this matter.  (*See generally* Resp.).

### A.  *Franks* Hearing

To merit a *Franks* hearing,

> a defendant must make a substantial preliminary showing that the affiant made false statements, either intentionally or with reckless disregard for the truth, pointing specifically to the portions of the affidavit claimed to be false, and that the false statements were necessary to the finding of probable cause. . . . When assessing whether the alleged false statements and omissions were material, the trial court is to disregard those portions of the affidavit which the defendant has shown are arguably false or misleading. . . . Even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause.

*United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009) (alterations added; brackets and internal citations and quotation marks omitted).  "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere

desire to cross-examine." *United States v. Arbolaez*, 450 F.3d 1283, 1294 (11th Cir. 2006) (citations omitted). "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.* (citations omitted). While the Motion and Reply only address statements made by one source, Miguel Aguirre-Pinzon ("Aguirre-Pinzon") (*see generally* Mot., Reply), at the Hearing counsel for Martinez raised issues with three additional sources identified by pseudonyms in the Affidavit: Gilberto Garavito Ayala, Camilo A. Gomez, and Lina Sierra.

With regard to Aguirre-Pinzon, Martinez fails to make a "substantial preliminary showing" Rodriguez made false statements or omissions. Martinez asserts the Affidavit improperly relies on Aguirre-Pinzon for the proposition he paid Martinez a "bribe." (Mot. 16 (quoting Aff. ¶¶ 5, 41)).[1] Martinez notes "Aguirre-Pinzon changed his story repeatedly regarding the money" (*id.* 16), by, for example, saying he was giving it to Martinez for safekeeping. (*See id.* 17). Aguirre-Pinzon recounted this version of his story in a petition for post-conviction relief he filed in his criminal case. (*See id.* 17 (citing Aguirre-Pinzon Mot. 3, 8)). Martinez argues the failure to inform the Magistrate Judge of these facts demonstrates a reckless indifference for the truth and a misrepresentation in the Affidavit. But the Affidavit clearly states Aguirre-Pinzon had made "contradictory and inconsistent statements," and describes another of Aguirre-Pinzon's explanations for his giving Martinez the cash (albeit not the safekeeping story). (Aff. ¶ 57). Further, Rodriguez states he only relied on Aguirre-Pinzon's statements made under oath or corroborated by other evidence. (*See id.*).

---

[1] Martinez attaches to the Motion Aguirre-Pinzon's Motion to Vacate . . . ("Aguirre-Pinzon Motion") [ECF No. 40-3], a sworn statement satisfying the requirement of *Arbolaez*.

The Affidavit supplies examples of this corroboration. As for Aguirre-Pinzon's statement he gave over $100,000 to Martinez in New York, hotel and airline records confirm Aguirre-Pinzon was in New York at the time and Martinez traveled to New York on a trip lasting less than 24 hours. (*See id.* ¶¶ 43–48). Aguirre-Pinzon's emails also confirm he spoke to Martinez about his trip to New York around the date of the alleged payment. (*See id.* ¶ 49). While Aguirre-Pinzon's conflicting explanations are obvious considerations in the probable cause analysis, "corroboration through other sources of information reduced the chances of a reckless or prevaricating tale," thus supporting the reliability of Aguirre-Pinzon's statements. *Illinois v. Gates*, 462 U.S. 213, 244–45 (1983) (citation and internal quotation marks omitted).

While Martinez does point out some omissions as to the backgrounds and prior activities of the three sources newly identified at the Hearing, his arguments concerning these sources fail for two reasons. First, he attaches no "[a]ffidavits or sworn or otherwise reliable statements of witnesses" to the Motion. *Arbolaez*, 450 F.3d at 1294 (alteration added; citation omitted). Admittedly, Martinez's counsel only recently learned of the information relevant to these witnesses. But the lack of sworn or demonstrably reliable statements was not satisfactorily explained, and Martinez has therefore failed to show a *Franks* hearing is required. *See id.*

Second, the omissions did not substantially undercut the Magistrate Judge's credibility determination as to these sources. Martinez highlighted varying aspects of the witnesses' backgrounds — including past criminal history and interactions with Government investigative agencies — that do not appear in the Affidavit. These are not significant enough to change the probable cause determination the Magistrate Judge undertook, as they do not appear to be significantly related to Martinez's prosecution. At a minimum, Martinez has made no

"substantial preliminary showing" of omissions that would have affected the probable cause determination. Accordingly, a *Franks* hearing is not granted.

### B.  Probable Cause in the Affidavit

Martinez asserts the Affidavit "fail[s] to establish any probability that evidence of any criminal activity would be found in [] Martinez'[s] residence." (Mot. 8 (alterations added)). He asserts the Affidavit lacks "a critical link in the chain of facts and circumstances that would lead to a reasonable belief that any of the described items would be located" specifically in his home. (*Id.* 9). He relies in part on *United States v. Flanagan*, 423 F.2d 745 (5th Cir. 1970), and *United States v. Lockett*, 674 F.2d 843 (11th Cir. 1982), in which searches were found to be unreasonable because the affidavits did not provide evidence contraband was stored in homes. (*See* Mot. 11).

"Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Kapordelis*, 569 F.3d at 1310 (citations and internal quotation marks omitted). "'Probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts.'" *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (alterations omitted; quoting *Gates*, 462 U.S. at 232). An affidavit supporting a warrant to search a residence "must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, i.e., a safe yet accessible place." *Kapordelis*, 569 F.3d at 1310 (citation and internal quotation marks omitted). An "affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Id.* (citations and internal quotation marks omitted). Reviewing courts give "due weight to inferences drawn from the facts

by the magistrate judge who issued the search warrant and the law enforcement officers investigating" criminal activity. *Id.* at 1311. As such, the Court's review is limited to whether Magistrate Judge Goodman "had a substantial basis for concluding that a search would uncover evidence of wrongdoing . . . ." *Gates*, 462 U.S. at 236 (alterations, citations and internal quotation marks omitted).

Here, the Affidavit offers a substantial basis for the Magistrate Judge's probable cause determination that evidence of criminal activity would be found in Martinez's residence. In considerable detail, the thirty-one-page Affidavit provides evidence Martinez had received large sums of cash and expensive gifts, and had taken trips as part of the scheme detailed in the Affidavit. (*See generally* Aff.). It also indicates Martinez had access to cash, as evidenced by frequent cash deposits into his bank account. (*See id.* ¶ 58). And it lays out facts indicating that at least as of March 2011, Martinez was likely to have additional cash or the physical proceeds of that cash available. (*See id.*).

Martinez asserts nothing in the Affidavit indicates a source or witness had "observed or learned that [] Martinez stored any of the alleged items in his residence." (Mot. 10 (alteration added)). But this omission is not fatal to the Government's position. A "police officer's expectation, based on prior experience and the specific circumstances of the alleged crime, that evidence is likely to be found in a suspect's residence satisfies probable cause." *United States v. Joseph*, 709 F.3d 1082, 1100 (11th Cir. 2013) (citation and internal quotation marks omitted). In *Joseph*, the affiant had experience "in over 1,000 investigations for violations of the Georgia Controlled Substances Act" and with "the unlawful distribution of both prescription drugs and 'street drugs' like cocaine and ecstasy." *Id.* The officer "stated that, based on his knowledge, training, and experience, dealers often store at their home illicit cash proceeds, receipts, and

other evidence of their crimes. This experience, along with the evidence that Green violated the Act, provided probable cause to search Green's home." *Id.*

While the Affidavit does not detail the number of investigations Rodriguez had taken part in, it does indicate he had spent approximately a dozen years working in law enforcement agencies and his duties consist of investigations of allegations of criminal activity by Department of Homeland Security employees. (*See* Aff. ¶ 1). The Affidavit states in Rodriguez's experience, he knows "'public officials' tend to keep evidence of their unlawful 'official acts,' such as cash, . . . in their residences . . . ." (*Id.* ¶ 63 (alterations added)). This information provides a substantial basis for the determination of probable cause.

The Eleventh Circuit has indicated no direct observation of contraband entering a defendant's residence is necessary to support a determination of probable cause the defendant kept evidence in his home. *See Kapordelis*, 569 F.3d at 1311–12 (noting affidavit indicated "Defendant had the *means* to obtain and store documents and items related to his travel . . . on a computer located in his home and by means of access to the Internet from his home[,] . . . a place where *one might ordinarily* orchestrate travel, keep information about one's travel, and make plans for activities" (alterations and emphasis added)). The Eleventh Circuit has sanctioned using "common sense in evaluating the facts" when determining whether a nexus exists between facts about criminal activity and the assertion evidence would be found in a defendant's home. *Id.* at 1312 (citation omitted). Given the clear holdings of *Joseph* and *Kapordelis*, the Court is unwilling to conclude *Flanagan* and *Lockett* require a search warrant affidavit to contain "independent observations or conclusions" from which a magistrate judge may infer contraband is located at a residence. (Mot. 11).

Further, this case is distinguishable from *United States v. Green* (*see* Reply 1–2), in which the court found no justification for a finding of probable cause to search a Key West residence when "no evidence, other than residence [sic], was set forth in the affidavits that connected the Key West, Florida, home to the criminal activity taking place almost 3,000 miles away." 634 F.2d 222, 225–26 (5th Cir. Unit B 1981) (footnote call number omitted). Here, the Affidavit provides evidence Martinez received a cash payment in New York and returned to South Florida the next morning, creating a clear connection to the region. (*See* Aff. ¶¶ 43–48).[2] Accordingly, there was a substantial basis for the Magistrate Judge to conclude evidence of Martinez's criminal activities would be kept in his residence.[3]

**C. Staleness**

Martinez asserts the Affidavit's "factual basis" comprises activities that occurred "at a minimum, one year prior to the execution of the search warrant," making the information too stale to satisfy the requirement of probable cause. (Mot. 9).

> When reviewing staleness challenges we do not apply some talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate, rather, we review each case based on the unique facts presented. In this case-by-case determination we may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched.

---

[2] Martinez notes the $100,000 cash payment in New York "is not charged in the Indictment." (Reply 5 n.2). The Government's eventual decision on charges, made over a year after the Magistrate Judge's probable cause determination, is not relevant to the Court's inquiry.

[3] Martinez asserts the "Affidavit does not establish the veracity of the other confidential informants, nor does it provide sufficient corroboration of their statements . . . ." (Reply 10). The undersigned cannot agree, as the Affidavit indicates numerous instances of corroboration. (*See, e.g.,* Aff. ¶¶ 24–29 (noting Government corroborated information provided by "CD1" through a review of Aguirre-Pinzon's emails)).

*United States v. Johnson*, 290 F. App'x 214, 222 (11th Cir. 2008) (per curiam) (citation omitted). When "an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. . . . Conversely, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." *United States v. Bemka Corp.*, 368 F. App'x 941, 943 (11th Cir. 2010) (per curiam) (alterations added; internal citations and quotation marks omitted).

The Affidavit alleges a long-term, protracted effort by Martinez to accumulate cash and gifts, dating to January 2009. (*See* Aff. ¶ 5). It states Martinez had received gifts that could be stored for long periods of time, such as a ring, wristwatch, and pen. (*See id.* ¶¶ 9–12, 32–34). It even notes Martinez admitted having between $6,000 and $7,000 in cash at his residence in March 2011, thus indicating his propensity for keeping cash there. (*See id.* ¶ 40). Given the length of time during which Martinez had received cash and gifts and his admission he had at one point stored cash in his residence, the Magistrate Judge reasonably concluded there was probable cause to search his home, a location one could be expected to store items meant to be kept private.

As brought to the parties' attention at the Hearing, one district court rejected a similar argument information was too stale to support a warrant to search for records, cash, and property based on activity occurring between one and two years before a warrant was issued:

> Business and financial records tend to defy claims of staleness. . . . The other items seized also fall outside Defendant's staleness argument. As the affidavit itself explains, it was reasonable to expect that large items purchased using cash . . . would be found at Defendant's residence long after they were purchased. Furthermore, considering the large amount of cash Defendant and his father allegedly withdrew from Stanley's CD account, it was reasonable to expect that at least some of that cash would still be at Defendant's residence even two years after the withdrawal. As such, despite the passage of nearly sixteen months between the end of Defendant's temporary guardianship and the issuance of the search warrant, the information within the affidavit remained timely.

9

*United States v. Ostrowski*, 822 F. Supp. 2d 66, 72 (D. Mass. 2011) (alterations added; internal citations omitted).  The Affidavit explains Martinez received a large cash payment in September 2010, approximately 18 months before the Warrant was issued.  (*See* Aff. ¶¶ 45–50).  As in *Ostrowski*, and as the Affidavit explains (*see* Aff. ¶¶ 63–66), it was reasonable to expect the cash or its proceeds sought by the Warrant would be at Martinez's home after 18 months.  The information in the Affidavit was not stale, and its age does not preclude a finding Magistrate Judge Goodman had a substantial basis for determining there was probable cause to search Martinez's home.[4]

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 40]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 26th day of August, 2014.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[4] Given this conclusion, the Court does not reach the question of the applicability of the *United States v. Leon*, 468 U.S. 897 (1984), good-faith exception.