UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-20929-CR-ALTONAGA

UNITED STATES OF AMERICA

vs.

JUAN FELIPE MARTINEZ
        Defendant.

_____/

DEFENDANT'S TRIAL MEMORANDUM OF LAW ON SCOPE OF CROSS-EXAMINATION OF GOVERNMENT WITNESS CAMILO GOMEZ MUNOZ

The Government filed Consolidated Motions in Limine on November 6, 2014 including a Motion to Preclude Specific Questions about CAG's Work as a Confidential Source [ECF 136] ("Gomez Motion to Preclude"). According to the Gomez Motion to Preclude, "except for questions regarding the amount of money paid to or is [sic] expected to be paid to CAG," any evidence the defendant seeks to present "about the information or work CAG has provided to U.S. law enforcement has no bearing on whether the Government can meet its burden regarding any of the counts of the Indictment and thus fails the most basic test of relevance under Federal Rule of Evidence 401 [ECF136 at 4-5]." The Government's Motions in Limine were denied without prejudice as premature and untimely, but the Court construed them as "pre-trial memoranda, provided to inform the Court of certain evidentiary issues the parties expect will arise [ECF 139]." This memorandum addresses the evidentiary issue raised in the

1

Gomez Motion to Preclude and explains why, under the Constitution and the case law, Defendant should be permitted broad cross-examination into the relationship between Camilo Gomez and the United States Government, including the nature and extent of his cooperation with several law enforcement agencies for whom he served or serves as a confidential source.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." A defendant's Sixth Amendment right to confront adverse witnesses includes the opportunity for effective cross-examination. *McKinzy v. Wainwright*, 719 F.2d 1525, 1528 (11th Cir. 1983). The Confrontation Clause requires that a defendant be permitted to show bias on the part of a prosecution witness, *United States v. Abel,* 469 U.S. 45, 50 (1984), [1] and the exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974). This is especially important with accomplices or other witnesses who have substantial reason to cooperate with the government. *United States v. Elliott*, 571 F.2d 880, 908 (5th Cir. 1978).

The Eleventh Circuit has held that the right to elicit bias on the part of a cooperating witness is "so important that the defendant is allowed to 'search' for a deal between the government and the witness, even if there is no hard evidence that such a deal exists." *Wasko v. Singletary*, 966 F.2d 1377, 1381 (11th Cir. 1992) (quoting *United*

---

[1] "Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant . . . ." *United States v. Abel, 469 U.S. 45, 52, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984).*

2

*States v. Onori*, 535 F.2d 938, 945 (5th Cir. 1976). As explained in *United States v. Lankford*, 955 F.2d 1545, 1548 (11th Cir. 1992):

> What counts is whether the witness may be shading his testimony in an effort to please the prosecution. "A desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception." *Id.* (quoting *Burr v. Sullivan, 618 F.2d 583, 587 (9th Cir.1980))*. And further, where the witness sought to be cross-examined is the government's "star" witness, "'providing an essential link in the prosecution's case, the importance of full cross-examination to disclose possible bias is necessarily increased.'" *Id.* at 275 (quoting *United States v. Summers, 598 F.2d 450, 460 (1979))*; *see also Calle, 822 F.2d at 1020*; *Haber v. Wainwright, 756 F.2d 1520, 1522 (11th Cir.1985).*

Camilo Gomez is the lead government witness against the Defendant on multiple counts of the Indictment. He has a lengthy criminal history as an international drug trafficker and money launderer but has never been charged with any crime by U.S. authorities. Gomez is described by the government as a "victim" of Defendant's alleged extortion, but Gomez is also alleged to have paid a bribe to Agent Martinez – criminal conduct for which Gomez has not been charged.

As the Court is aware from pre-trial proceedings in this case, for at least six years, Gomez has worked and been paid as a confidential source for DEA. He has also worked as a confidential source for ICE, FBI and ATF. He has received tens of thousands of dollars in cash payments from DEA and ICE (the lead investigative agency in this case) for "information and services," hundreds of thousands of dollars in "award" payments, and tens of thousands of dollars in "reimbursement" for "expenses." He has received immigration benefits for himself and his family at the request of his ICE handlers. Despite the recent exposure of Gomez's asylum fraud and despite the Government's current charge in Count IV of the Indictment that Gomez bribed a federal ICE agent

3

during the course of his active employment as a documented DEA and ICE informant, the prosecution has disclosed that Gomez continues to be employed by DEA and expects to receive further payments from the government as a result of his ongoing work for DEA.

Under the Confrontation Clause and the case law discussed above, Agent Martinez is entitled to cross-examine Gomez concerning the details of these extensive informant relationships with DEA, ICE, FBI, and ATF, including, for example, inquiry into:

- Why he was of such "value" to the various agencies who used and paid him, including the nature and extent of his criminal past and the pedigree of the criminal organizations with whom he associated;[2]
- The nature and closeness of the bond with his handlers;
- The amount of time Gomez and his handlers spent together, where, and under what conditions;
- What type of "services" and "information" he provided in return for the hundreds of thousands of dollars in cash payments he has received from our government;
- What type of "expenses" he incurred for which he was reimbursed;
- The dates on which the payments were made;

---

[2] The particulars of Gomez's criminal history (including his relationship with La Oficina de Envigado and the Macaco organization) and his handlers' knowledge thereof is also of direct relevance to the charges and defense in this case given the Government's theory that the charged extortion under color of official right was effectuated by Gomez's alleged fear that if he did not give him money and gifts, Agent Martinez would have him prosecuted or deported for his past crimes.

4

- the nature of the immigration benefits provided to him and his family and his expectation of future immigration benefits; and

- the nature and extent of the services he continues to provide to DEA for which he expects to receive future payments.

These areas of inquiry are relevant not just to Gomez's bias and motivation as a witness, but are also relevant to the bias and motivation of government agents who investigated and participated in the prosecution of this case and who will testify at trial. In short, the benefits and deference shown to this witness are so extraordinary that the Defendant should be permitted to explore and argue that Gomez's past and ongoing value to the Government – whatever it might be – is of such vital importance that the Government's entire investigation and prosecution is infected with its desire and need to protect him and his testimony from attack in this case so that, among other reasons, he remains of value as a witness in future cases.

The qualified law enforcement privilege cases cited by the Government do not apply here. Despite the Government's continued insistence to the contrary, Camilo Gomez is not a confidential source who can only be referred to by his initials and whose identity is privileged. He is a lead witness in a criminal case against Defendant Martinez and subject to confrontation at this public trial. Nor are Gomez's past and ongoing activities on behalf of the United States Government – the prosecuting entity in this case who has elected to call him to the stand to accuse Agent Martinez – privileged and immune from inquiry. They are part and parcel of the symbiotic relationship between and among Gomez, his handlers and the Government; the genesis, nature, and extent of Gomez's informant activities are important to assess the value of the benefits he has

received, the value of the benefits he has provided to the Government, and the resulting bias and motivation of Gomez and the government agents who will testify. Where disclosure of what otherwise might fall under the law enforcement privilege "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *United State v. Roviaro*, 353 U.S. 53, 60-61 (1957); *United States v. Van Horn*, 89 F. 2d 1492, 1508 (11th Cir. 1986).

To the extent the Government is concerned about particular questions or avenues of inquiry it believes may expose specific investigative techniques or endanger other individuals whose identification is unnecessary to achieve the ends discussed above, *see, e.g., Van Horn* at 1508 (nature and location of electronic surveillance equipment subject to qualified law enforcement privilege), those can be addressed as they arise.

Respectfully submitted,

s/Jane Serene Raskin, Esq.
Jane Serene Raskin
Fla. Bar No. 0848689
jraskin@raskinlaw.com

s/Martin R. Raskin, Esq.
Martin R. Raskin
Fla. Bar No. 0315206
mraskin@raskinlaw.com

**RASKIN & RASKIN, PA**
866 South Dixie Highway
Coral Gables, Florida 33146
Telephone: (305) 444-3400
Facsimile: (305) 445-0266

                 s/ Silvia B. Pinera-Vazquez
                 Silvia B. Pinera-Vazquez, Esq.
                 Fla. Bar No. 821537

                 **PINERA-VAZQUEZ LAW FIRM**
                 1900 Southwest 3rd Avenue
                 Miami, Florida 33129
                 Telephone: (305) 443-0629

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on November 11, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                 <u>s/ Jane Serene Raskin, Esq.</u>